## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

85  607<br>90  119

## WILLIAMS v. THE COMMONWEALTH.

January 10th, 1889.

1. CRIMINAL PROCEEDINGS—*Instructions after jury retired.*—Without instructions case is submitted, and after being out several hours, jury ask for instructions as to "reasonable doubt," and the court fully and correctly instructs them, but excludes other instructions offered by prisoner ;

HELD :

No error, as the offer came too late.

2. IDEM—*Murder—Evidence certified—Case at bar.*—The evidence here certified and considered under the rule as to demurrers to the evidence ;

HELD :

Sufficient to warrant the verdict of guilty as charged in the indictment.

3. IDEM—*Former acquittal.*—A plea that when prisoner's associate was tried for the same offence, prisoner was a fugitive from justice, and that associate was acquitted, and that therefore prisoner was acquitted ;

HELD :

Bad.

4. IDEM—*Jurors—Competency.*—A juror testifies that he had read the evidence on the trial of the prisoner's associate, and formed an opinion, but not a positive one, and could give the prisoner a fair trial on the evidence ;

HELD :

He is competent.

5. IDEM—*Homicide—Evidence—Res gestæ* —Bullet taken from deceased's body of same kind as that carried by pistol habitually carried by prisoner, and burglar's nippers identified as prisoner's and found near scene of homicide, are admissible as part of the *res gestæ.*

6. IDEM—*Evidence—Indictment for other offences.*—Record of indictment in another State against prisoner at time of homicide is admissible to show motive for resisting arrest.

7. IDEM—*Evasion of arrest.*—Evidence that after the homicide prisoner evaded arrest, and after arrest broke jail and resisted re-arrest, is competent.

8. IDEM—*Jury—By-standers.*—Under Code 1887, § 4019, where persons from the by-standers are ordered to be summoned to complete the panel on trial of a felony, the list is not required to be signed by the judge.

Error to judgment of corporation court of city of Alexandria, rendered 14th July, 1888, on trial of Wm. Williams indicted jointly with one John Curran for the murder of Julian Arnold, a policeman. The jury found the prisoner guilty of murder in the second degree, and fixed his term of imprisonment in the penitentiary at five years, and the court sentenced him accordingly. From this judgment the prisoner brought his case here upon a writ of error. Opinion states the case.

*J. R. Caton,* and *J. H. Greene,* for the prisoner.

*Attorney General R. A. Ayers,* for the Commonwealth.

LACY, J., delivered the opinion of the court.

The case was not argued here by the attorney-general, who stated that he doubted the propriety of the action of the judge of the said corporation court in the matter set forth in the ninth bill of exceptions, but would submit the question for the court's decision, which is as follows: That after the evidence and argument of counsel, the case was submitted to the jury without instruction being asked by either side, and the jury retired to consult of their verdict, and after about four hours were sent for by the judge and asked for their verdict. They responded that they had not agreed upon a verdict, and the foreman then said that some of the jury " would like to have a ' reasonable doubt ' defined " ; whereupon the counsel for the defendant asked two instructions. The court gave one and rejected the other ; and the Commonwealth's attorney asked one, which was given. The

instruction given at the instance of the defendant was this: "The jury are instructed that a reasonable doubt is such a doubt as may be honestly and reasonably entertained as to any substantial and material fact essential to prove the offence charged." The instruction given at the instance of the Commonwealth was as follows: "Reasonable doubt must be based upon the evidence, or that is suggested by the evidence, or grows out of the evidence itself. It must not be an arbitrary doubt, without evidence to sustain it. It must be serious and substantial in order to warrant an acquittal. It must be a doubt of material fact or facts necessary for the jury to believe to find a verdict of conviction, and not of immaterial and non-essential circumstances" —which the court gave. The instruction asked for by the defendant and refused was as follows: "Unless the jury shall believe from the evidence that the prisoner is guilty of the crime of which he stands indicted, beyond a reasonable doubt, they shall find him not guilty; and unless they believe the evidence is of such a character as to exclude every reasonable hypothesis of his innocence, they shall find him not guilty." This instruction was not rejected by the judge because of any supposed inaccuracy therein, but because, as a matter of practice, the judge thought it best to restrict the instructions to a full and complete response to the inquiry made of him by the jury. As a matter of practice, both sides had waived their right to ask instructions for the jury before the case was submitted to the jury for decision; and neither side could claim the right to call the jury back to give them instructions, except by leave of the court. It was, however, proper for the court to fully and completely respond to inquiry which might come from the jury for information touching their duties; and if this was done, and correctly done, then neither side had any valid right to demand more. We think the response made by the court to the inquiry of the jury on this point was fully and correctly made, and that there was no error in refusing other instructions asked at that time, especially if refused, as was the case here, because they

came too late.  We are of opinion, therefore, that there is no error in this action of the corporation court.

The tenth assignment of error is, that the court refused to set aside the verdict and grant a new trial upon the motion of the accused; and the evidence is certified, which, by law, will be considered in this court as upon a demurrer to the evidence by the plaintiff in error.  The case upon the evidence is, briefly, that on the night of the 14th of May, 1887 (there having been a circus performance in the city of Alexandria that day), two men were hanging about a restaurant, in the night-time, which had taken in a good deal of money during the day, and approached a witness on the sidewalk and asked the time at twenty minutes before twelve o'clock, one standing off and avoiding observation, and moving off when approached, and both going in during the evening and calling for drinks.  For some cause, which we cannot know, as he was slain that night, Policeman Arnold had his suspicions aroused concerning these men, and they, for some cause not explained, went off and hid themselves in the circus lot, and in the ring now altogether vacated by the circus, which had left, and one laid down under the edge of the raised earth on the south side of the ring, the other on the north side of the ring.  Policeman Arnold called on the witness, Padgett, to go and assist in making an arrest, and went with Padgett to the ring, gave Padgett his club, and he kept his pistol.  As they neared the ring, Arnold said to Padgett, "You take the man on the south; I will take the one on the north." Witness knocked his man down, and finally took him, with help; but Arnold was shot and killed by the other man, who retreated and got away.  The man taken was Curran, and the prisoner and Curran had been seen together and recognized by a witness, who knew them both well, during the evening of the day of the homicide.  Other witnesses identify the prisoner (though not with equal certainty) as being the man with Curran, hanging around the restaurant and avoiding observation, and moving off to avoid being seen; and by one witness who saw

him in the restaurant taking a drink, and upon whom he turned and gave a look and a smile, when witness thought he had better leave. Close by the place where the homicide was committed, a pair of nippers, or burglars' instruments, were picked up; and, this being announced in the newspapers, a witness in Washington city, who knew that the prisoner was the partner in criminal business with Curran, the arrested party, notified the police that he could identify the nippers if they belonged to Williams, the prisoner; that he had seen them made. These being seen, this witness identified them as belonging to Williams, the prisoner, who was then at large, who was, however, afterwards arrested, but broke jail again, and was again, after a time, arrested, armed with a pistol and dirk, the latter as sharp as a razor, both of which he attempted to use, giving a false name, and, when told that he was arrested for that Alexandria affair, said that Curran should be arrested too, and Curran was as guilty as he was. The prisoner was sworn on his own behalf, and said he was not in the city on the night of the homicide, and did not shoot Arnold; that he is known in police circles as the notorious Billy Williams, the crook; and that when any crime is committed in Washington, D. C., that he is suspected; that he is thirty-two years of age, and had been convicted of felony six times, and had spent in prison sixteen years of his life. He was convicted at seventeen years of age as a sneak-thief, in Philadelphia, and served four years for it. He was convicted of shooting Officer Airs in Washington, and got four years for it. He claimed that he did not do the shooting. When he was arrested in a house in Baltimore, Md., he was treated very badly; his nose was broken. Had a pistol then, but did not use it. It was a public house. The witness declined to tell why he went into the house. That the police authorities are down on him and want him convicted. He was a fugitive from justice at the time of the shooting of Arnold. The indictment introduced in evidence was pending against him, and he had jumped his bail, and was avoiding arrest and in hiding. He

claimed that he was innocent of that offence; that he was often innocent of the offences, but that the police authorities persecuted him and hounded him.   At the trial the nippers found near the spot where the homicide was committed were recognized by the mechanic who made them as his work, and he testified that he had sold a pair of nippers to the prisoner, but he declined to be positive that these were the nippers he sold the prisoner, but he recognized them as his work.   Another witness identified them as the pair this mechanic made, and as the nippers made for the prisoner.   Upon this evidence there can be no reasonable doubt that the crime was committed by the prisoner.   He was the habitual companion in crime of Curran. He was away from home and in company with Curran in broad daylight.   He was in his company a few minutes before the homicide was committed.   His burglar's nippers were dropped on the spot where the death-struggle took place; and the strongest motive is shown to commit crime in order to avoid arrest, for he himself says that he was under indictment for felony, and a fugitive from justice.   There are numerous witnesses who tes tify to his presence in Alexandria at that time; and if he was absent, as he claims, no witness has so stated except himself. We think the court did not err in overruling the motion to set aside the verdict of the jury.

The first exception assigned here as error is, that when the prisoner's associate, Curran, was tried, the prisoner was a fugitive, and could not be tried, and Curran was acquitted, and that therefore the prisoner was acquitted.   The court overruled his plea to this effect, and did not err in so doing.   The record distinctly shows that Curran alone was tried, and that the prisoner was at large, and he has himself so testified.   The second exception is as to the admission of F. J. Davidson upon the *venire.* Upon his examination upon his *voir dire* Davidson had said that he had read the evidence at the trial of Curran, and had formed an opinion, but not a positive one, and that it would not influence his judgment on the trial; that he had no prejudice

against the prisoner, and that he could give him a fair and impartial trial,—in effect, that he would try the case upon the evidence adduced upon the trial, and not upon what he had read about Curran. He was a competent juryman. The third exception assigned as error is as to the admission in evidence of the nippers of the prisoner. What has been said already under the tenth exception disposes of this question, and it is clear that they were admissible in evidence, not only as the property of the prisoner, but as forming part of the *res gestæ.* The fourth exception assigned as error is because of the action of the court in admitting in evidence the ball taken from the body of the deceased. This was admissible as part of the *res gestæ,* but it was also proved that the prisoner carried habitually a "bulldog" pistol, which carried such a ball as that, and it was proper to admit the ball in evidence, and there was no error in this action of the corporation court. The fifth bill of exceptions is as to the action of the corporation court of Alexandria in admitting as evidence to the jury the record of an indictment against the prisoner in Washington city, D. C., pending against the prisoner at the time of the homicide, from which prosecution the prisoner was then a fugitive. It is not admissible to prove against a prisoner other crimes than the one for which he is being tried, nor was this done. The indictment was admitted, not as evidence of any other crime, but to show a strong motive on the part of the prisoner to resist arrest at the time the deceased attempted to arrest him, and for such purpose was admitted; but its admission in this case was no injury to the accused in any sense, for he himself testified to the fact of its existence, and that he was a fugitive from justice at the time of the killing of Arnold. The sixth exception assigned as error is that the court allowed the introduction of evidence to show that after the homicide the prisoner evaded arrest for some time, and, when arrested and lodged in jail, he broke jail a few days before the court met, and remained at large for some months before he was retaken. There was no error in this. The con-

duct of a person accused of crime, after the offense has been committed, often leads to his arrest and conviction, and is a legitimate subject of investigation. The seventh exception has been disposed of in considering the fifth exception, it being to the introduction of evidence of the fact that the accused was under indictment for felony, and a fugitive from justice at the time of the homicide. The eighth exception is as to the introduction of evidence of the circumstances attending his rearrest. This has been considered under the sixth bill of exception ; and the deadly character of his arms, and his desperate resistance, including an attempt to draw a knife, which was five and a half inches long in the blade, one and a half inches wide, and run to a point, and was as sharp as a razor, showed a strong determination to resist arrest at extreme hazards, and raised a strong presumption of guilt against him. The assignment of error because the third and fourth writs of *venire facias* were not ordered by the court must be overruled, as the record shows that they were properly issued. And the assignment of error that the court refused to quash the fourth writ of *venire facias*, because the list was not signed by the judge, must be overruled. These were summoned from the by-standers, and the law does not require such list to be so signed. Section 4019 of the Code of Virginia provides: "In any case of felony, where a sufficient number of jurors to constitute a panel of sixteen, free from exception, cannot be had from those summoned and in attendance, the court may direct another *venire facias*, and cause to be summoned from the by standers, or from a list to be furnished by the court, so many persons as may be deemed necessary to complete the said panel." This law was complied with when, as it shows, the five named persons were summoned to complete the panel from the by-standers, and it is not required in such case that the judge shall sign this list.

This disposes of all the errors assigned, and we see no ground for reversing the judgment. Whatever may be the grievance of this much-prosecuted and often-convicted criminal, he has no

cause to complain of any injustice received at the hands of the jury in this case. His crime was of the worst type known to the law. He has taken the life of a faithful guardian of the public safety, intent only in the discharge of his duty, without other provocation or motive than the obvious one to secure to himself greater license to commit crime, and a longer immunity from punishment. We are of opinion to affirm the judgment of the corporation court of Alexandria city.

JUDGMENT AFFIRMED.