𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

RAY JENKINS V. COMMONWEALTH.

March 16, 1922.

Absent, West, J.

1. CRIMINAL LAW—*Presumptions and Burden of Proof—Flight.*— The flight of a person accused of crime, or in a position rendering it likely that he will be accused thereof, does not raise a presumption of his guilt.

2. CRIMINAL LAW—*Evidence—Flight.*—While the flight of accused does not measure up to the standard of presumptive evidence of guilt, it is evidence tending to show guilt, and as the circumstances surrounding the flight of a person after the commission of a crime will vary greatly in individual cases, the flight of the accused is to be considered by the jury and given such weight as they deem proper in connection with other pertinent and material facts and circumstances in the case.

3. INSTRUCTIONS—*Flight of Accused—Presumption of Guilt—Prejudicial Error.*—In the instant case it was error for the trial court to tell the jury that the flight of a person after the commission of a crime raises a presumption of guilt; and as the case was not one in which the Supreme Court of Appeals could say that no other verdict could have been properly found, this error was prejudicial.

4. INSTRUCTIONS—*Flight of Accused—Presumption of Guilt—Prejudicial Error.*—An instruction announcing the proposition that flight raises a presumption of guilt constitutes reversible error, notwithstanding that after announcing the erroneous proposition, the instruction proceeded to tell the jury that they might take the fact of defendant's flight into consideration in determining his guilt or innocence, with all the other facts or circumstances introduced.

5. INSTRUCTIONS—*Flight of Accused—Presumption of Guilt—Cure of Erroneous Instruction.*—An instruction by which the jury were told that accused was presumed to be innocent until proven guilty, and that the presumption of innocence followed him throughout the case, did not cure the error in another instruction that the flight of accused raised a presumption of guilt.

Error to a judgment of the Circuit Court of Rappahannock county.

*Reversed.*

The opinion states the case.

*Grimsley & Miller,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

Upon indictment under what is known as the maiming statute (Code, section 4402), the defendant, Ray Jenkins, was found guilty of feloniously shooting one Walter G. Miller, and sentenced to a term in the penitentiary. Thereupon, the case was brought here by writ of error.

The shooting occurred on a dark night in the village of Washington, Rappahannock county. There were several persons in the immediate vicinity from which the shot was fired, and the evidence is in serious conflict as to the identity of the person who did the shooting. The defendant, after testifying that he did not even have a pistol on that occasion, stated that his brother did the shooting, and he was corroborated by the latter in that statement. After Miller was shot, the defendant and his brother ran away to Madison county, where after a month or more they were arrested and brought thence to Rappahannock county, where the defendant was tried. He explains his flight by saying that he was afraid he would be arrested for shooting in town. This explanation does not seem very satisfactory in view of the fact that he denied having done any shooting, and yet when it is recalled that he and his brother were together at the time, it does not seem unreasonable

that he should.have feared that they would both be involved in a charge of shooting on the street. At any rate, he was entitled to have the jury pass upon his explanation. The pertinency of this comment upon his flight and his explanation thereof will be apparent when we consider, as we shall proceed to do, the first assignment of error, which is based upon the allegation that the court erred in giving Commonwealth's instruction No. 2, as follows:

"(2) The court instructs the jury that the flight of a person after the commission of a crime raises a presumption of guilt; and if they believe from the evidence that the prisoner, Ray Jenkins, did, immediately after the shooting of Walter G. Miller, flee from the place where said Miller was shot to the county of Madison, Va., you may take this fact into consideration in determining his guilt or innocence; which question of flight you may consider, together with all the other facts and circumstances introduced in determining the guilt or innocence of the prisoner."

This instruction starts out with an erroneous proposition of law, namely, "that the flight of a person after the commission of a crime raises a presumption of guilt." So far as we have found, and so far as the attorney general's office appears to have found, the only authority for this proposition appears in certain of the Missouri cases, wherein it is held that the flight from a charge of crime raises a presumption of guilt which may be rebutted and overcome by proof that the flight was occasioned by other causes than consciousness of guilt. (See *State* v. *King,* 78 Mo. 555; *State* v. *Brooks,* 92 Mo. 542, 583, 5 S. W. 257, 330; *State* v. *Lewkowitz,* 265 Mo. 613, 178 S. W. 58.)

[1, 2]    The better doctrine, supported by the clear weight of authority, is that such flight as is described in the instruction under review does not measure up to the standard of presumptive evidence of guilt, but is merely evidence tending to show guilt, to be considered by the jury and given

such weight as they deem proper in connection with other pertinent and material facts and circumstances in the case. 22 Am. & Eng. Enc. (2nd Ed.) 1265; 12 Cyc. 395; 9 R. C. L., p. 192, sec. 188; *Hickory* v. *U. S.,* 160 U. S. 408, 16 Sup. Ct. 327, 40 L. Ed. p. 474; *Alberty* v. *United States,* 162 U. S. 499, 16 Sup. Ct. 864, 40 L. Ed. 1051; Wharton's Crim. Ev., secs. 750, 751.

Upon principle, it would seem manifest that the only safe and just rule upon the subject is as last above announced, because the circumstances surrounding the flight of a person after the commission of a crime will vary greatly in individual cases. In this connection, the language of Mr. Justice Brown, in *Alberty* v. *U. S., supra,* is in point. He said: "While there is no objection to that part of the charge which permits the jury to take into consideration the defendant's flight from the country as evidence bearing upon the question of his guilt, it is not universally true that a man, who is conscious that he has done a wrong, 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper;' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' Innocent men sometimes hesitate to confront a jury —not necessarily because they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves. The criticism to be made upon this charge is, that it lays too much stress

upon the fact of flight, and allows the jury to infer that this fact alone is sufficient to create a presumption of guilt."

The precise question before us in this case does not appear to have been passed upon in this State, this court not having heretofore had occasion to decide whether the flight of a person accused of crime, or in a position rendering it likely that he would be accused thereof, could be said to raise a presumption of his guilt. There are, however, cases in which this court has held that proof of the flight is a circumstance to be considered by the jury. *Williams* v. *Commonwealth*, 85 Va. 607, 613, 8 S. E. 470; *Anderson* v. *Commonwealth*, 100 Va. 860, 863, 42 S. E. 865. In the latter case, Judge Cardwell, delivering the opinion of the court, said: "When a suspected person attempts to escape or evade a threatened prosecution, it may be argued that he does so from consciousness of guilt; and *though the inference is by no means strong enough by itself to warrant a conviction,* yet it may become one of a series of circumstances from which guilt may be inferred. An attempt to escape or evade prosecution is not to be regarded as a part of the *res gestae,* but only a circumstance to be considered by the jury along with other facts and circumstances tending to establish the guilt of the accused. The nearer, however, to the commission of the crime committed, the more cogent would be the circumstance that the suspected person attempted to escape or to evade prosecution, but it should be cautiously considered, because it may be attributable to a number of other reasons than consciousness of guilt." Citing Wharton's Crim. Ev., secs. 750, 751. (Italics added.)

[3] It was error to tell the jury, as was done in instruction No. 2, that the flight of a person after the commission of a crime "raises a presumption of guilt;" and we are unable to say, upon evidence before us, that this error did not operate to the prejudice of the prisoner. The case is not

one in which we can say no other verdict could have been properly found. It is not for us to say that the defendant was, or that he was not, guilty as charged, but the case was peculiarly one to be settled by the verdict of the jury upon correct instructions. Two persons other than the prisoner had the opportunity to do the shooting with which he was charged. He testified that one of these, his brother Hubert Jenkins, fired the shots, and the latter corroborated him in this statement. The other person, one Willie Sisk, was arrested just after the shooting, and at that time denied any knowledge as to who did it, but later on, while in jail and after being admonished by the attorney for the Commonwealth that the Jenkins brothers, if arrested, "might frame up the shooting on him," changed his story and said, as he afterwards testified in court, that he was present and knew that Ray Jenkins did the shooting.

In this state of the evidence, it was of especial importance to the prisoner that the jury should be properly instructed as to the manner in which they should consider and weigh the evidence of his flight.

[4] It is true that the instruction complained of, after announcing the erroneous proposition pointed out above, proceeded to tell the jury that they might take the fact of the defendant's flight "into consideration in determining his guilt or innocence. * * * together with all the other facts or circumstances introduced." But how were they likely to consider and weigh this fact? They had just been plainly told that the fact itself raised a presumption of guilt, and this meant that they could convict on that presumption alone. Was it not highly probable that they would be misled by the opening sentence of the instruction into the conclusion that they must approach the consideration of this feature of the evidence with the understanding that the burden was on the defendant to show that he was not guilty? If they followed the first part of the instruc-

tion, they could hardly have come to any other conclusion. While we do not consider the error in the instruction under review as glaring or as plainly prejudicial to the prisoner as the instruction which was condemned by the United States Supreme Court in *Hickory* v. *U. S., supra,* one of the comments of the court in that case appears to us to be pertinent here. After pointing out that the instruction in that case erroneously told the jury "that flight raised a presumption of guilt," the court said: "It is true, the charge thus given was apparently afterwards qualified by the statement that the jury had a right to take the fact of flight into consideration, but these words did not correct the illegal charge already given. Indeed, taking the instruction that flight created a legal presumption of guilt with the qualifying words subsequently used they were both equivalent to saying to the jury that they were, in considering the facts, to give them the weight which, as a matter of law, the court declared they were entitled to have; that is, as creating a legal presumption so well settled as to amount virtually to a conclusive proof of guilt."

[5] There was an instruction given in the instant case at the request of the defendant by which the jury were told that he was presumed to be innocent until proven guilty, and that the presumption of innocence followed him throughout the case, but we do not think this instruction, any more than the qualification or modification appearing in the Commonwealth's instruction No. 2, cured the error in the latter. There was either a conflict between the two propositions as thus announced to the jury, or such a confusion of the rules of evidence as would tend to mislead them. If they gave full force and effect to the instruction which told them that the defendant was presumed to be innocent until proved guilty, they would still be confronted with the other proposition, as announced by instruction No. 2, that he was in fact proved guilty by proof of his flight, and they might

thus have felt bound to find that the presumption of his guilt arising from his flight was sufficient to overcome the presumption of his innocence announced in the defendant's instruction.

Being of opinion that there was error in the Commonwealth's instruction No. 2, and being unable to say that such error was without prejudice to the defendant, the judgment complained of must be reversed.

As the case must be sent back to the circuit court for a new trial, we do not pass on the assignment of error questioning the sufficiency of the evidence to warrant the verdict.

There were several other assignments, but they involve questions which are not likely to arise at the next trial, and therefore need not be considered.

*Reversed.*