## NEVA JONES v. COMMONWEALTH OF VIRGINIA.

October 13, 1952:

Record No. 4023.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

Z. V. Johnson, Jr. and Joseph M. Winston, Jr., for the plaintiff in error.

J. Lindsay Almond, Jr., Attorney General, and Frederick T. Gray, Assistant Attorney General, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The defendant, Neva Jones, has been sentenced to death for the murder of his wife. The sufficiency of the evidence to support the verdict is admitted, but the defendant contends that the court committed prejudicial error in its response to a question from the jury as to whether they would have any assurance that the defendant would not "get out" if they gave him life imprisonment or a long term of years. The court certified the following statement of facts:

"Neva Jones, age 28, colored, was tried on January 21st, 22nd and 23rd, 1952, on an indictment for the murder of his wife, Helen Jones. The defendant killed his wife in front of the Ritz Theater for colored persons on Spring Street, in Danville, Virginia, on the night of May 21, 1951. The defendant first cut his wife in the face and then began stabbing her while chasing her around a car parked in front of the Ritz Theater. The stabbing took place in the presence of several disinterested witnesses who described the brutal manner in which it was done. The sole defense of the defendant was that he intended to cut his wife on the face to keep her from being so attractive to men and that he then suffered a mental blackout and knew nothing about having stabbed his wife and killing her. He had suffered these blackout spells before and on at least one occasion such a spell had been witnessed by fellow workers. He received a medical discharge from the Army in 1945 because of these spells

which he first suffered while overseas; and his army hospital record showed these spells to be epileptic in nature as evidenced by electroencephalograph tracings."

It is shown by the record that after the jury had been considering their verdict for about two hours the court had them brought back into the courtroom and inquired whether they desired to go to supper or to continue their deliberations. Some stated they would like to go to supper and others made no answer. The foreman thereupon left the jury box and went to the Bench. There, in the presence of the defendant, his counsel and the Commonwealth's attorney, he stated that the jury had decided that the defendant was guilty of murder in the first degree but they wanted to know whether if they gave him life imprisonment, a term of ninety-nine years or any long term of years, they would have any assurance that the defendant would not "get out." The court told the jury that "it could not give that assurance; that would be in the hands of the executive branch of the government and that the court was of the judicial branch; that you and I represent the judicial branch and have nothing to do with that." One of defendant's counsel then inquired of the court privately, and not in the hearing of the jury, whether it would be proper further to advise the jury that persons sentenced to life imprisonment are not eligible for parole. The court answered counsel in the negative. Counsel did not formally note an objection or an exception to the court's action at that time. The jury then announced that they preferred to continue their deliberations rather than go to supper. They returned to their room and after deliberating 20 or 25 minutes they returned a verdict of guilty of murder in the first degree and fixed the punishment at death.

 The proper response to inquiries of the kind here made was stated in *Coward* v. *Commonwealth*, 164 Va. 639, 178 S. E. 797, in effect to be that it is the duty of the jury if they find the accused guilty to impose such punishment as they consider to be just under the evidence and within the limits stated in the court's instructions; and that they must not concern themselves with what may afterwards happen.

In the *Coward Case* the jury returned into court and inquired what time the defendant would get off while he was confined in jail. The court responded by quoting the statute to the effect that with the consent of the judge he would get ten

days off of each month under stated conditions. That response was held to be reversible error. After reviewing cases from a number of other jurisdictions, this court said:

"* * * It is error for the court, by its instructions, or for counsel in argument, to tell the jury that its sentence imposed and confirmed may be set aside or cut down by some other arm of the State. It is their duty to inflict such punishment as appears to be just and proper and this is the full measure of their duty." 164 Va. at p. 646, 178 S. E. at p. 799.

In the opinion the court referred to chapter 136, Acts 1932, providing a good behavior credit of fifteen days on each month of sentence and said: "A jury which has been instructed as to this statute might be of opinion that ten years' confinement was just punishment for a proven crime. In order to impose it a twenty year sentence would be necessary. Plainly such a verdict would be indefensible." 164 Va. at p. 642, 178 S. E. at p. 798.

It was also said in the opinion that "courts often hold that this admitted error, if not harmless, is insufficient to sustain a reversal. It is harmless where a minimum sentence is imposed and it is harmless in murder cases when the sentence is death, and generally it is of little importance where the court in itself fixes the penalty." 164 Va. at p. 646, 178 S. E. at p. 799.

In saying that the error would be harmless in murder cases "when the sentence is death," the reference was necessarily to cases where the death sentence could not have been influenced by the error.

In *McCann* v. *Commonwealth*, 174 Va. 429, 447, 4 S. E. (2d) 768, 775, involving a similar situation, the procedure established by the *Coward Case* was quoted with approval.

The rule stated in the *Coward Case* has been applied in other jurisdictions. In *Commonwealth* v. *Johnson*, 368 Pa. 139, 81 A. (2d) 569, 572, after the jury had deliberated some twenty minutes they inquired of the court what the sentence of life imprisonment meant, "Does it mean what it infers or is there the possibility of a pardon after serving part of his time?" The court replied that "life imprisonment means what it says," but that the Board of Pardons had the right to intervene and to pardon anyone sentenced by the court; "That is something that we cannot control." The jury imposed the death penalty. The sentence thereon was reversed. The court said it was

obvious that the jury hesitated at fixing the penalty at life imprisonment because they feared the defendant might be pardoned at some future time, and when told that might happen and was something beyond the control of the court, they decided on the death penalty. It was said that the statement of the trial judge, although true, was highly prejudicial; that it was the duty of the jury to determine the punishment without recourse to conjecture as to any possible or probable action of the Board of Pardons at some later time and they should have been so instructed in response to their question.

In *Williams* v. *State*, 191 Tenn. (27 Beeler) 456, 234 S. W. (2d) 993, after the jury had deliberated for sometime they inquired of the court whether a sentence for a term of years would mean that the defendant would have to stay in prison the whole time. The court responded: ''Not necessarily. It would depend upon the good behavior of the defendant and the attitude of the Parole Board under the indeterminate sentence law, but that is something with which you have nothing to do.'' 234 S. W. (2d) at p. 993. The jury soon returned a verdict of electrocution. The sentence thereon was reversed, the court saying that it was error whenever the trial judge undertakes to enter into a discussion with the jury as to what is the effect of certain punishment; that the course pursued in *Porter* v. *State*, 177 Tenn. (13 Beeler) 515, 151 S. W. (2d) 171, should have been followed and the jury told that the only instructions to govern their actions were embodied in the written charge.

In *Houston* v. *Commonwealth*, 270 Ky. 125, 109 S. W. (2d) 45, after the jury had considered the case for a while they asked the court whether a sentence for life would prevent the defendant's being pardoned. The court answered that it would not prevent that. The jury fixed the punishment at death but the judgment thereon was reversed. The court approved and reaffirmed the procedure previously outlined in *Postell* v. *Commonwealth*, 174 Ky. 272, 192 S. W. 39, of instructing the jury in response to such a question that their verdict should not be influenced by what another department of the State government might or might not do, but that they should be guided only by the facts pertinent to the guilt or innocence of the defendant and the law applicable thereto.

See also *Bean* v. *State*, 58 Okl. Cr. 432, 54 P. (2d) 675;

*Ramirez* v. *State,* 112 Tex. Cr. 332, 16 S. W. (2d) 814; *Lovely* v. *United States,* 4 Cir., 169 F. (2d) 386, 391.

In some jurisdictions it has been held that such instructions should be considered on the basis of the language used, in the light of the circumstances of the trial, in order to determine whether prejudicial error has been committed. *State* v. *Howard,* 222 N. C. 291, 22 S. E. (2d) 917.

In *State* v. *Carroll,* 52 Wyo. 29, 69 P. (2d) 542, a number of cases are reviewed and the court concludes that by the weight of authority reference to clemency which might be extended after verdict is ordinarily held not to be so prejudicial as to require reversal. In its opinion the court said it was not inclined to go as far as some of the cases had gone; that a voluntary statement by the court might have a tendency to influence the jury in their verdict, and hence should not be made; but it did not see how any good purpose would be served by refusing to answer an inquiry by the jury. It decided in that case that the jury had not been misled but said that in the future, upon inquiry made and answered fairly, without suggestion as to what penalty should be imposed, the trial judges should tell the jury that they should not speculate upon what might happen after the verdict.

It seems to us that if it is thought necessary to tell the jury not to speculate about the information given, it is safer not to give the information at all, but rather to follow the rule of the *Coward Case* and tell the jury that the information they ask is about something not proper for them to consider. The danger lies in the use made of the information and whether it is given voluntarily or involuntarily is not likely to control its use. As an example of the length to which a contrary practice may lead, see *State* v. *Mosley,* 102 N. J. L. 94, 131 A. 292, and the dissenting opinion of Judge White at page 297.

Furthermore, the statement by the court in the case in judgment did not fully inform the jury upon the point to which their inquiry was directed. Section 53-251 (2) of the 1950 Code provides that "Persons sentenced to die or to life imprisonment shall not be eligible for parole." It is true that power is vested in the governor to grant pardon, as well as to commute capital punishment, Code § 53-228; but who can say that the verdict here would have been rendered had the jury been told that the defendant could not be paroled after a sentence

of life imprisonment and would not "get out" unless pardoned by the governor?

█ It was the duty of the jury to fix the punishment according to the evidence and within the limits prescribed by law. It is clear that they were considering life imprisonment or a long term of years as proper punishment. It cannot be known whether they would have finally decided on such punishment, or to what extent they were influenced to a verdict of death by a consideration of what we said in the *Coward Case* it was not proper for them to consider; *i. e.*, that a sentence of imprisonment might be set aside or cut down by some other arm of the State, acting under authority of a law of no less dignity than that which should govern the jury and possibly with a wisdom from the future not then available to the jury.

The General Assembly of the Commonwealth, in addition to providing for pardon and for credit on prison sentences to encourage good behavior, has established a system of probation and parole looking to the rehabilitation of persons convicted of crime. The program has been in the main wisely administered and good results have been accomplished. There have been, of course, errors in judgment in individual cases. Such an instance may be in the mind of one or more members of a particular jury. But that jury, or any other, should not fix a defendant's punishment with the view of preventing the operation of laws that have been duly enacted for the handling of a prisoner after sentence in a way considered by the lawmakers to be in the best interests of the public and of the prisoner. To fix a defendant's punishment on that basis, quoting the *Coward Case* again, "would be indefensible." If proper for the court to instruct the jury at their request about the operation of probation and parole laws and the statutes conditionally curtailing prison sentences, it would be rather illogical to deny to counsel the right to argue on the subject of such instruction; and if right for the jury to consider such an element, it would be hard to find reason for denying a request by counsel for a written instruction informing the jury fully and accurately on the matter before the case is submitted to them. Such a practice would permit punishments to be based on speculative elements, rather than on the relevant facts of the case, and would lead inevitably to unjust verdicts.

█ The Attorney General makes the point that the defend-

ant should not now be heard to complain because he made no formal objection or exception to the statement of the court nor to its failure to call attention to section 53-251 (2), *supra*. We are not inclined to dispose of this case on that ground. Counsel said they were taken by surprise at the occurrence; the record indicates that they were rather depending on the court in a situation new to them, and they assigned the action of the court as the basis for their motion to set aside the verdict.

The judgment complained of is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

SPRATLEY, J., concurring.

I concur with the majority that this case should be reversed and a new trial awarded. My concurrence, however, is based upon the failure of the trial judge to fully inform the jury upon the point to which their inquiry was directed. I do not think we should hold it to be improper for a trial judge to advise the jury of the law of parole and pardon where full information is given in response to an inquiry of the jury relating to that subject. The reasons assigned for the conclusion of the majority seem to me to be unsound. The conclusion is moreover against the great weight of authority. In *State* v. *Carroll,* 52 Wyo. 29, 69 P. (2d) 542, the cases on this subject are reviewed and the reason for the rule adopted in most of the jurisdictions is well expressed.

The function of the jury is to determine the question of the guilt or innocence of the accused and the degree or graveness of his offense. It is their duty to impose the penalty which they think appropriate, in view of the nature of the crime and the character of the accused as revealed by his record and their impressions of him at the trial. The object of the penalty is to punish the accused, deter others from crime, and to protect the public. In considering these elements, questions naturally arise whether the accused will be required to suffer the punishment imposed, or will be able to escape therefrom by reason of the provisions of some other law. In such consideration, the jury cannot act intelligently in determining the measure of punishment to fit the crime and the man, unless they have knowledge

of the possible consequences of the law relating to the payment of the penalty by the convict.

When the court itself fixes the measure of punishment, the trial judge knows, or ought to know, whether the penalty imposed may be diminished by some other arm or agency of the State. No valid objection can well be made to this knowledge of the trial judge. It seems to me it should be no less proper for a jury to have the same information, especially in view of the weight which we give to their verdicts. How can it be wrong to inform the jury of the law relating to the execution of a penalty assessed by them when we hold that it is not error for a trial judge with knowledge of the law to fix the measure of punishment?

The power of parole and pardon is one of law and common knowledge. The question asked by the juror in this case clearly showed that the jurors, or some of them, knew that there was some provision of law for the release of convicts; but were not aware of the specific conditions under which it was operative. They had already determined that the accused was guilty of murder in the first degree. In view of the nature of the crime and the disclosed character of the accused, they did not, as his counsel says in his brief, want him "to be released and recommit a similar offense." The only way for them to effectuate their determination to keep the accused from being paroled and thereby become a menace to society was to fix his punishment at death or at life imprisonment. Virginia Code, 1950, § 53-251 (2). A simple refusal to answer their inquiry would have left them in confusion and doubt as to whether their determination could be effected. The several jurors might have differed as to the provisions for pardon, parole, and good conduct allowance for convicts. Some might have thought that only certain of the provisions were applicable to this case; while others might have believed that none was. As a result they would have been unable to unanimously reach a fair and intelligent conclusion in accordance with their determination. In such a situation of confusion, there may be a reaction, just as likely against the accused as in his favor.

The duties of the Virginia Parole Board are correctional and not penal. Virginia Code, 1950, § 53-250. The exercise of the powers of the Board is dependent upon the eligibility of the convict for parole after a certain period of confinement. This

eligibility is based largely upon his outward conformity to prison rules and regulations. All too frequently, as experience has shown, the more hardened convicts will conduct themselves in conformity to the rules, or break the rules in such a manner that they cannot be caught, solely for the purpose of saving time and not because of any real desire to reform their social attitudes or better themselves otherwise. The functions and duties of juries and the Virginia Parole Board are, therefore, highly distinctive and not in conflict.

The accused relies upon the cases of *Dingus* v. *Commonwealth,* 153 Va. 846, 149 S. E. 414 and *Coward* v. *Commonwealth,* 164 Va. 639, 178 S. E. 797, each decided by a divided court.

The majority opinion does not cite the first named case, apparently because there are numerous grounds for the reversal of the conviction there, besides the remarks of the Commonwealth Attorney to the jury with reference to the power of the Executive Department of the State to lessen punishment.

The opinion in the *Coward Case* supports, in part, the contention of the accused here; but it goes further and says that the error complained of is "harmless in murder cases when the sentence is death," a statement which receives but slight consideration by the majority here. Because of the view I take of the question under review, I would disregard the conclusion of error in that case, and make the proper ruling in this case in accordance with the logic of the situation and the weight of authority.

In *Williams* v. *Commonwealth,* 85 Va. 607, 609, 8 S. E. 470, where a trial judge complied with the request of the jury for information, this court said, "It was, however, proper for the court to fully and completely respond to inquiry which might come from the jury for information touching their duties; and if this was done, and correctly done, then neither side had any valid right to demand more." See *Hebner* v. *Sullivan, ante,* p. 259, 72 S. E. (2d) 689.

The refusal of the court in the present case to fully answer the inquiry of the jury was, I think, prejudicial to the accused. The language of their inquiry clearly indicates that they wanted assurance that the accused would be confined for life, that is, never be released to prey upon society. Being unable to secure that assurance, or full information as to the possibility of his future release, they imposed the punishment of death, when a

sentence of life imprisonment might have carried out their determination. Having undertaken to answer their inquiry, the court should have informed them of the good conduct allowance for convicts, (Code of Virginia, 1950, § 53-213); the eligibility of a convict to parole, (Virginia Code, 1950, § 53-251); and the constitutional power of the Governor to grant pardons or reprieves, (Constitution of Virginia, § 73; Code of Virginia, 1950, § 53-228). In my opinion, no prejudice would have resulted had such information been given in simple and direct language.

I am authorized to say that Mr. Justice Smith concurs in the foregoing views.