*337 BENTON, Judge,
with whom ELDER, J., joins, dissenting.
Rule 3A:16(a) provides that “[i]n all cases the court shall instruct the jury before arguments of counsel to the jury.” The principle is also well established that “[i]t [is] ... proper for the [trial judge] to fully and completely respond to inquiry which might come from the jury for information touching their duties.” Williams v. Commonwealth, 85 Va. 607, 609, 8 S.E. 470, 471 (1889). See also Marlowe v. Commonwealth, 2 Va.App. 619, 625, 347 S.E.2d 167, 171 (1986). “The trial judge’s ‘imperative duty [to properly instruct the jury] ... is one which can neither be evaded nor surrendered.’ ” Johnson v. Commonwealth, 20 Va.App. 547, 554, 458 S.E.2d 599, 602 (1995) (en banc) (citation omitted). Thus, when read together, Rule 3A:16(a) and Virginia case decisions permit the trial judge to give a supplemental jury instruction which clarifies an existing instruction or a principle previously existing before the jury. However, when responding to the jury’s inquiry concerning their duties, the trial judge must fully and accurately inform the jury on matters upon which the jury makes inquiry. See Jones v. Commonwealth, 194 Va. 273, 278, 72 S.E.2d 693, 696 (1952). The supplemental instruction that the trial judge gave to the jury over Lorenzo McLean’s objections falls short of this standard.
At the conclusion of the evidence, the trial judge gave the jury the following instructions concerning intent:
The defendant is charged with the crime of capital murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
(1) That the defendant killed William Jones; and
(2) That the killing was willful, deliberate and premeditated; and
(3) That the killing occurred during the commission of a robbery while the defendant was armed with a deadly weapon.
*338 “Willful, deliberate, and premeditated” means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time.
^ if: sjc >jí :{:
The defendant is charged with the crime of robbery of William Jones. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
(1) That the defendant intended to steal; and
(2) That property was taken; and
(3) That the taking was from William Jones or in his presence; and
(4) That the taking was against the will of the owner or possessor; and
(5) That the taking was accomplished by beating William Jones.
The principal elements of robbery, a crime against the person of the victim, are the taking, the intent to steal and violence. The violence must occur before or at the time of the taking. The intent to steal and taking must co-exist. The offense is not robbery unless the intent was conceived before or at the time the violence was committed.
:¡: £ s|i * % H*
You may infer that every person intends the natural and probable consequences of his acts.
(Emphasis added).
After the jury had begun deliberating, the jury sent the following two questions to the trial judge: “May we have a legal definition of intent?” and “Is the word intent collective?” The jury’s questions clearly indicate that the jury was seeking a definition of intent, an issue in the case. The trial judge did not answer the first question and asked the jury to state “what they mean by that [second] question.” The jury then asked, “Once the intent is spoken by one member of a group *339 and the act is performed, does the intent to commit the act apply to all? What is the law concerning this?”
The appropriate response to the jury’s inquiry should not have posed any particular difficulty. The definition of intent is well established in Virginia case law. “Intent is the purpose formed in a person’s mind.” Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). See also Merritt v. Commonwealth, 164 Va. 653, 662, 180 S.E. 395, 399 (1935). Stated another way, “intent is the purpose to use a particular means to effect a definite result.” Banovitch v. Commonwealth, 196 Va. 210, 218, 83 S.E.2d 369, 374 (1954).
The trial judge failed, however, to appropriately address the jury’s stated concern. Instead, in response to the jury’s inquiries, the trial judge interjected for the first time the issue of “concert of action.” None of the jury instructions had mentioned “concert of action” or touched upon that principle as a theory of liability. Thus, this is not a case in which the trial judge amended an instruction that was erroneous when earlier given to the jury. See Blevins v. Commonwealth, 209 Va. 622, 628, 166 S.E.2d 325, 330 (1969) (stating that the trial judge “not only has the right but ... a duty to amend instructions which appear to be erroneous or misleading after summation by counsel”). The jury had not been instructed on the concept of “concert of action,” or any other theory of accomplice liability, and the jury made no inquiry about that concept. McLean’s counsel could not have been clearer in stating, “[w]e would agree that the language is the definition, but we are opposed to you giving that at all.”
By injecting in the trial for the first time during jury deliberations the concept of “concert of action,” the trial judge deprived McLean of the right to have his counsel argue to the jury the principles contained in the instruction as they related to the facts of the case. See Rule 3A:16(a). “[I]f a supplemental jury instruction given in response to a jury’s question introduces a new theory to the case, the parties should be given an opportunity to argue the new theory.” United States v. Fontenot 14 F.3d 1364, 1368 (9th Cir.1994). Failure to *340 allow argument after a new issue is introduced in the case results in “unfair prejudice.” Id. See also Bouknight v. United States, 641 A.2d 857, 861 (D.C.1994) (after giving a supplemental instruction on aiding and abetting, a new theory of liability, the trial judge properly allowed limited additional argument).
Even if the trial judge’s response to the jury’s inquiry correctly stated the law of “concert of action,” the trial judge erred by answering the jury in a manner that was incomplete and nonresponsive to the jury’s inquiry. See Shepperson v. Commonwealth, 19 Va.App. 586, 591-92, 454 S.E.2d 5, 8 (1995). Simply put, “the statement by the [trial judge] in the case in judgment did not fully inform the jury upon the point to which their inquiry was directed.” Jones, 194 Va. at 278, 72 S.E.2d at 696. The failure to respond to the jury’s inquiry concerning intent and the giving of an instruction on “concert of action,” without directly responding to the jury’s inquiry, “might have had the effect to mislead the jury as to the law of the case.” Wren v. Commonwealth, 66 Va. (25 Gratt.) 989, 994 (1875).
The jury instructions as initially given at the close of the case required the jury to find specific intent to kill and specific intent to steal to convict McLean of capital murder and robbery, respectively. By failing to define for the jury “intent” and instead giving an instruction that injected the notion of “probable consequences, ... whether such crime was originally contemplated or not,” the trial judge substituted the concept of foreseeability for intent and, thereby, allowed the jury to assess criminal responsibility for specific intent crimes whether the conduct was originally intended or not. As the Supreme Court observed in Wren, “[t]he jury, composed of ... [people] without knowledge of legal principles, might have been led to believe [another proposition from the trial judge’s nonresponsive answer].” Id. at 995. The jury could have concluded that the question of intent, on which they sought further guidance, was not as germane to their inquiry as was the principle of “concert of action,” which the trial judge injected at the request of the Commonwealth.
*341 The majority opinion sets out in detail the objections stated at trial by McLean’s counsel. In my view, those objections fully and fairly preserved this issue for appeal. The majority opinion’s attempt to parse the objections into minute points fails to convince me otherwise. For the reasons I have given, I would reverse the convictions and remand for a new trial. Accordingly, I dissent.