Present:   All the Justices

MYRON TURMAN
                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 072174                October 31, 2008

COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

                           I.

    In this appeal from a judgment of the Court of Appeals

affirming convictions for rape and sexual battery, we consider

whether a circuit court erred by instructing a jury that it

could consider a defendant's purported flight from the

location of alleged crimes.

                           II.

    A grand jury in Fairfax County indicted Myron J. Turman

for forcible oral sodomy in violation of Code § 18.2-67.1,

rape in violation of Code § 18.2-61, and forcible anal sodomy

in violation of Code § 18.2-67.1.  At the conclusion of the

Commonwealth's evidence in a jury trial in Fairfax County, the

circuit court struck the charge of forcible oral sodomy, and

at the conclusion of the trial, the jury convicted Turman of

rape and sexual battery.  The jury fixed his punishment at

eight years imprisonment for the rape conviction, twelve

months imprisonment for the sexual battery conviction, and a

fine of $1,500.00.  The circuit court confirmed the verdict.

                            1

The defendant appealed his convictions to the Court of Appeals. The defendant asserted that the circuit court erroneously instructed the jury that it could consider his departure from the victim's apartment after the crimes had been committed as evidence of flight to avoid detection, apprehension or arrest. The Court of Appeals affirmed the judgment of the circuit court. Turman v. Commonwealth, Record No. 0838-06-4 (September 25, 2007) (Coleman, J., dissenting). We granted Turman an appeal.

### III.

Applying well-established principles of appellate review, we will state the evidence in the light most favorable to the Commonwealth, the prevailing party in the circuit court. Bishop v. Commonwealth, 275 Va. 9, 11, 654 S.E.2d 906, 907 (2008); Pruitt v. Commonwealth, 274 Va. 382, 384, 650 S.E.2d 684, 684 (2007); Rose v. Commonwealth, 270 Va. 3, 6, 613 S.E.2d 454, 455 (2005); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005).

The victim, a female, had known the defendant since 1999. They had been friends for five or six years and the victim considered Turman her best friend. In September 2002, the victim and Turman had a consensual sexual encounter.

Around 10:00 p.m. on October 5, 2002, the victim, who lived in Fairfax County, went to a dance club in Washington,

2

D.C.  Turman contacted the victim, by cellular telephone, and asked her how long she planned to remain at the club.  The victim told Turman that she did not plan to return to her apartment until sometime between 2:00 a.m. and 4:00 a.m.

The victim left the dance club around 2:30 a.m. and arrived at her apartment around 3:00 a.m. on October 6, 2002.  As the victim was driving her car in the parking lot adjacent to her apartment, Turman, who was also in the parking lot, contacted the victim on her cellular telephone.  When the victim "got out" of her car, she was surprised to see Turman, who stated, "You look very nice this evening."  Turman told the victim that he was "on his way home and thought he'd stop by [to see her]."  Turman and the victim walked to her apartment, which was on the third floor of an apartment complex.

After Turman and the victim entered her apartment, the victim went to her bedroom and began to remove her jewelry.  Turman followed her into the bedroom.  The victim, who had worn a "see-through" dress to the dance club, "felt kind of uncomfortable in it.  So [she] went [into the bathroom and] changed into . . . pajamas."

After the victim changed her clothes, Turman went into the bathroom.  While he was there, the victim laid "across [her] bed."  Turman returned to the victim's bedroom and

3

asked, "Do you mind if I lay down?," and the victim replied, "Yes, I do mind."  The victim left the bedroom and went to another room in the apartment.

The victim told Turman that she was uncomfortable and that he should leave her apartment.  Turman "grab[bed]" the victim "in a bear hug," picked her up, and carried her into her bedroom.  Turman kissed the victim on her neck and breasts, and performed oral sodomy upon her.  Turman had sexual intercourse with the victim, who told him to stop several times.  Turman told the victim that he wanted to commit acts of anal sodomy upon her, and she said, "No."  The victim started kicking and scratching him, and he committed acts of anal sodomy upon her.

The victim managed to run to her living room.  She picked up a cordless telephone receiver, and told Turman: "I want you to get out now. . . .  I'm going to call the cops if you don't leave.  I just want you to get dressed and leave.  That's all I want you to do."  Turman responded: "Okay, I'm going.  I'm going.  I'm going to get dressed.  I'm leaving.  Don't call the cops.  I'm leaving."

The victim was "going to" dial 911 but she stopped after she had dialed the first two digits - 91 - because Turman was getting dressed.  The victim testified: "I gave him the benefit of the doubt and [told him to] '[g]et out of my

4

house.' "  The victim went back to her bedroom and she had her cordless telephone receiver in her hand.  She told Turman: "Get dressed now."

The victim followed Turman as he walked from the living room to the exit door.  The victim still had a telephone in her hand.  She told Turman: "Look, just leave."  Turman stopped at a "little doorway," and he "fix[ed] his clothes." The victim stated: "You don't need . . . to fix your clothes. I just want you to go.  Go like that.  Just leave out of my house before I call the cops."  Turman responded: "You would call the cops on me . . . ?"  The victim replied:  "Yes, I would."

Turman "lung[ed]" at the victim and took the telephone from her.  She ran into her bedroom and used a telephone to dial 911.  The victim heard a door shut and she assumed that Turman had left her apartment.  The victim spoke to an emergency response operator and police officers eventually arrived at her apartment.

Several months later, the victim received an "instant message" on her computer from Turman.  Turman stated in the "instant message" that he was very sorry for humiliating her. The victim did not print the "instant message," nor did she save the "instant message."

Turman testified that he did not rape the victim but that they had a consensual sexual encounter. Turman stated that he and the victim had "casual sex" on seven prior occasions. According to Turman, the victim called him on the night of October 5, 2002, and asked him to meet her at her apartment once she left the dance club, and that she desired to "have sex, chat, [and] cuddle."

Turman testified that after he had engaged in oral sex and sexual intercourse with the victim, she suggested that they engage in anal sodomy, but that he "[was] not into that." Turman stated that he became "uncomfortable" after they had consensual sex because the victim began talking about her former boyfriend. Turman decided to leave the victim's apartment. According to Turman, the victim became upset and threatened him, stating: "If you leave I'm going to pick up the phone and I'm going to dial 911, [and tell the police that] you raped me."

Eventually, police officers stopped a car that Turman was driving after he had left the victim's apartment. Turman told the police officers that he had been "down in Prince William County."

The victim was examined by a nurse at a hospital. The nurse concluded that the victim had bruises on her right thigh, left arm, and an abrasion on her shoulder. The victim

6

sustained a tear to her anus, which was consistent with blunt force trauma.

IV.

A.

The circuit court, over the defendant's objection, gave the following instruction to the jury:

> "The [c]ourt instructs the jury that if a person leaves the place where a crime was committed, or flees to avoid detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime. However, it is a circumstance which you may consider along with the other evidence."

The defendant argues that the circuit court erred by giving this instruction because the record is devoid of any evidence that he left the victim's apartment to avoid detection, apprehension, arrest, or criminal prosecution. The defendant asserts that the evidence clearly established that he left the victim's apartment because she repeatedly directed him to leave after the sexual acts had occurred. Responding, the Commonwealth contends that there is evidence of flight in the record and that, therefore, the circuit court properly instructed the jury. We disagree with the Commonwealth's contention.

We have stated that "[j]ury instructions are proper only when supported by the evidence." Commonwealth v. Leal, 265 Va. 142, 145, 574 S.E.2d 285, 287 (2003). This Court has

7

repeatedly held that a jury instruction may not be submitted to the jury unless "the evidence asserted in support of such an instruction '. . . amount[s] to more than a scintilla.' " Porter v. Commonwealth, 276 Va. 203, 241, 661 S.E.2d 415, 434 (2008) (quoting Buchanan v. Commonwealth, 238 Va. 389, 409, 384 S.E.2d 757, 769 (1989)); Justus v. Commonwealth, 222 Va. 667, 678, 283 S.E.2d 905, 911 (1981); Hatcher v. Commonwealth, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978); Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975).

In Williams v. Commonwealth, 85 Va. 607, 614, 8 S.E. 470, 473 (1889), we held that evidence of a criminal defendant's flight to avoid prosecution is a circumstance that a jury may consider. Indeed, a well-established principle in this Commonwealth is that a suspect's acts to escape, or evade detection or prosecution for criminal conduct may be evidence at a criminal trial, and a jury may be instructed that it could consider such acts. For example, we stated in Anderson v. Commonwealth, 100 Va. 860, 863, 42 S.E. 865, 865 (1902):

> "When a suspected person attempts to escape or evade a threatened prosecution, it may be argued that he does so from consciousness of guilt; and though the inference is by no means strong enough by itself to warrant a conviction, yet it may become one of a series of circumstances from which guilt may be inferred. An attempt to escape or evade prosecution is not to be regarded as a part of the *res gestae*, but only as a circumstance to be considered by the jury along with the other facts and circumstances tending to establish the guilt of the accused. The

8

nearer, however, to the commission of the crime committed, the more cogent would be the circumstance that the suspected person attempted to escape, or to evade prosecution, but it should be cautiously considered, because it may be attributable to a number of other reasons, than consciousness of guilt."

See also Edmondson v. Commonwealth, 248 Va. 388, 390, 448 S.E.2d 635, 637 (1994); Boykins v. Commonwealth, 210 Va. 309, 313-14, 170 S.E.2d 771, 774 (1969); Carson v. Commonwealth, 188 Va. 398, 408, 49 S.E.2d 704, 708 (1948).

But we note, however, that the flight of a person after the commission of a crime does not raise a presumption of guilt.  We stated in Jenkins v. Commonwealth, 132 Va. 692, 694-95, 111 S.E. 101, 102 (1922):

"The better doctrine, supported by the clear weight of authority, is that . . . flight . . . does not measure up to the standard of presumptive evidence of guilt, but is merely evidence tending to show guilt, to be considered by the jury and given such weight as [it] deem[s] proper in connection with other pertinent and material facts and circumstances in the case."

Upon application of the aforementioned principles to the record in this case, we hold that the circuit court erred by instructing the jury on the defendant's purported flight.  The record is simply devoid of more than a scintilla of evidence that Turman left the victim's apartment after the sexual acts

9

had occurred because he sought to avoid detection, apprehension, arrest, or criminal prosecution.

The victim testified that she repeatedly told Turman to leave her apartment after he raped and sexually assaulted her. As we have already stated, the victim testified that she told Turman: "I want you to get out now. . . . I'm going to call the cops if you don't leave. I just want you to get dressed and leave. That's all I want you to do." As Turman dressed in his effort to leave the victim's apartment, the victim testified that she stated again: "Look, just leave. . . . You don't need . . . to fix your clothes. I just want you to go. Go like that. Just leave out of my house before I call the cops." After the victim uttered these statements to the defendant, he "lung[ed] [at the victim] and pull[ed] the cell[ular telephone] out of [her] hand." The victim ran into her bedroom and the defendant left her apartment.

B.

The jury instruction at issue in this case is substantially similar to an instruction in the Virginia Model Jury Instructions and, therefore, we are compelled to point out that the model jury instruction suffers from a significant defect.[*] The model jury instruction states

_____

[*] See 1 Virginia Model Jury Instructions - Criminal, No. 2.300, at 2-23 (repl. ed. 2008).

10

> "[i]f a person [leaves the place where a crime was
> committed; flees to avoid prosecution; flees to avoid
> detection, apprehension or arrest; intentionally assumes
> a false name immediately after the commission of a
> crime], this creates no presumption that the person is
> guilty of having committed the crime.  However, it is a
> circumstance which you may consider along with the other
> evidence."

(Emphasis added).

The phrase, "if a person leaves the place where a crime was committed," renders both the model jury instruction and the instruction that was used in this case incorrect statements of law because almost every person who commits a crime and is not apprehended at the crime scene invariably will leave the place where the crime was committed.  Thus, except when the fact of leaving the place where a crime was committed is itself an element of the crime charged, the above phrase is overly broad and would apply in every criminal trial when a suspect was not arrested at the scene of the crime, even when the suspect did not flee to avoid detection, apprehension, arrest, or criminal prosecution.  This incorrect portion of the instruction would allow a jury to infer that a person had a consciousness of guilt merely because that person left a place where a crime was committed.  Departure from a place where a crime has been committed does not always constitute, and is often different from, leaving or flight to

11

avoid detection, apprehension, arrest, or criminal
prosecution.

C.

The Commonwealth argues that even if the circuit court
erred in giving the jury this instruction, such error is
harmless.  We disagree.

When deciding whether nonconstitutional error is harmless
in the context of a criminal trial, we must apply Code § 8.01-
678 that states in relevant part:

> "When it plainly appears from the record and the
> evidence given at the trial that the parties have
> had a fair trial on the merits and substantial
> justice has been reached, no judgment shall be
> arrested or reversed . . . [f]or any . . . defect,
> imperfection, or omission in the record, or for any
> error committed on the trial."

We have also adopted the following test that we apply in a
criminal case to determine whether nonconstitutional error was
harmless:

> "If, when all is said and done, the conviction is
> sure that the error did not influence the jury, or
> had but slight effect, the verdict and the judgment
> should stand . . . . But if one cannot say, with
> fair assurance, after pondering all that happened
> without stripping the erroneous action from the
> whole, that the judgment was not substantially
> swayed by the error, it is impossible to conclude
> that substantial rights were not affected. . . . If
> so, or if one is left in grave doubt, the conviction
> cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731
(2001) (omissions in original) (quoting Kotteakos v. United

12

States, 328 U.S. 750, 764-65 (1946)); see also Adams v. Commonwealth, 275 Va. 260, 277-78, 657 S.E.2d 87, 97 (2008); Rose v. Commonwealth, 270 Va. 3, 11-12, 613 S.E.2d 454, 458-59 (2005).

Applying the harmless error test for nonconstitutional error and Code § 8.01-678, we hold that the circuit court's decision to give the jury the challenged instruction constitutes reversible error.  The dispositive issue during the trial of this case was whether the sexual conduct between the victim and Turman was consensual.  If the jury accepted the victim's version of the facts, Turman committed the crimes.  If the jury accepted Turman's version of the facts, however, no criminal acts occurred.  Thus, the jury was required to determine which person, the victim or Turman, was more credible, and the facts at trial were vigorously contested. In addition, the jury did not convict the defendant of forcible anal sodomy but instead convicted him of sexual battery.

In view of the strongly disputed testimony, and the importance of the credibility of the victim and the defendant, this Court cannot say that the conviction "was not substantially swayed" by the erroneous jury instruction. Clay, 262 Va. at 260, 546 S.E.2d at 732.  Hence, we cannot conclude with fair assurance that the substantial rights of

the defendant were not affected and we hold that the convictions cannot stand.

V.

For the aforementioned reasons, we will reverse the judgment of the Court of Appeals and we will remand this case to the circuit court for further proceedings if the Commonwealth be so advised.

Reversed and remanded.

14