COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Friedman and Senior Judge Clements
Argued at Richmond, Virginia

LEON SYKES, JR.

v.        Record No. 1404-24-2

COMMONWEALTH OF VIRGINIA

UNPUBLISHED

MEMORANDUM OPINION* BY
JUDGE FRANK K. FRIEDMAN
JULY 22, 2025

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Gregory R. Sheldon (Bain Sheldon, PLC, on brief), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Leon Sykes, Jr. of aggravated sexual battery, in violation of Code

§ 18.2-67.3, and indecent exposure, in violation of Code § 18.2-387.  The trial court sentenced

Sykes to incarceration for a total of 20 years and 12 months, with no time suspended.

Sykes argues that the trial court erred in admitting certain video recordings, in granting a

jury instruction on flight, and in finding that the evidence was sufficient to convict him of each

offense.  Finding no error, we affirm the trial court's judgment.

BACKGROUND[1]

On December 1, 2022, R.M., then 93 years old, was a resident at Bickford of Chesterfield

assisted living, a facility located in Chesterfield County.  R.M.'s son explained that his mother

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] "In accordance with familiar principles of appellate review, the facts will be stated in
the light most favorable to the Commonwealth, the prevailing party at trial." *Meade v.
Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469,
472 (2018)).

was "having a hard time taking care of herself," that she "was having issues remembering to take her medicine," and "would forget where she was at and different things." By December 1, 2022, her memory was deteriorating. She stayed in her room, watched television, and napped. Because she had fallen multiple times, R.M.'s son installed video cameras in her living room and bedroom "to make sure [that] when she fell we could get over there." The cameras were motion activated and recorded a fifteen-second "burst" which was then uploaded over the internet. The cameras did not record continuously.

On December 1, 2022, while at work, R.M.'s son received multiple notifications of recordings by the cameras. The recordings showed an unknown man going into R.M.'s room. Her son could see that the individual "had his penis out." A screenshot of that image was submitted to the jury. R.M.'s son did not recognize the individual as an employee at Bickford. He called his wife, who called the police. The son then drove directly to Bickford and found his mother was "scared." He shared the recordings with police, who already had arrived.

At trial, the eight clips were admitted over Sykes's objection and shown to the jury.[2] Each clip was brief, lasting from ten to twenty seconds, and captured events spanning about six minutes. The son described the recordings as they were played for the jury.

The first two clips showed Sykes walking from the common hallway through R.M.'s living room and into her bedroom. Sykes was stroking his crotch with his right hand while his penis was exposed. The third clip showed Sykes walking into the bedroom, moving his hand along his exposed penis, leaning over R.M. in her bed, and then touching the material over her left breast with his right hand. The fourth and fifth clips showed Sykes walking about in R.M.'s unit. The sixth clip showed Sykes walking into R.M.'s bedroom, again leaning over her as she

___

[2] Sykes filed and argued a pretrial motion *in limine*, objecting to the recordings as hearsay. The trial court denied the motion. He reiterated his objection to the ruling at trial.

- 2 -

laid in bed, and reaching towards her right breast with his right hand, twice. R.M. did not move, speak, or otherwise react to Sykes's presence, or touching, in the first six clips.

The seventh clip showed Sykes leaning over R.M. and touching her chest with his right hand towards her right breast. During this touching, R.M. appeared to wake up, her body started to shake, and she shouted "Woah" or "Oh" multiple times, and exclaimed, "Its's my bust."[3] Within seconds, she added, "I'm going to tell." Sykes then scampered out of R.M.'s bedroom. The eighth clip showed Sykes leaving R.M.'s unit.

Eileen Kwak, the Executive Director of Bickford, was at the facility on the day of the incident and saw the recordings the son showed to the police. She and her assistant recognized the man in the recording when he returned, later that day, to deliver a wheelchair to another resident. The assistant called 9-1-1, and Kwak stalled the man until the police arrived. She confirmed that the man in the recording was the same man she later recognized and that he was dressed the same at both times.

Chesterfield Police Officer Philip Redford answered both 9-1-1 calls. He viewed the son's recordings after responding to the first call and then left Bickford. When he returned to Bickford, he spoke to Sykes, after advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He identified Sykes at trial. Officer Redford confirmed that Sykes was dressed the same when he spoke with him as he had been in the son's recordings.

After reviewing the video recordings a second time, Officer Redford again spoke to Sykes. Officer Redford recorded those exchanges with his body-worn camera. Three recordings from his body-worn camera were admitted without objection.

---

[3] The son testified that his mother commonly referred to her breast as her "bust": "In the older generation my father and my mother would talk like that."

Sykes admitted being in R.M.'s room. He claimed that he was responding to her calls for help. He said that, when he went in her room, he thought she was complaining of pain around her breasts. He alleged that he looked for a nurse but saw no one. He claimed that he moved her hands and her necklace to the side and saw bandages around her breasts, under her shirt. Officer Redford told Sykes that the family's recordings did not corroborate any call for help. He told Sykes that the recordings showed Sykes with his penis exposed, touching himself, and touching R.M.'s chest. Sykes repeated that he heard her say that she needed help. He also claimed that he was holding his penis to keep from urinating on himself because he is a diabetic and cannot control it. Sykes stated that the events did not occur as they appeared in the recordings.

The jury ultimately convicted Sykes of aggravated sexual battery and indecent exposure. He now appeals.

ANALYSIS

I. Excited Utterance

"On appeal, this Court 'reviews a trial court's ruling admitting or excluding evidence for abuse of discretion.'" *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 866 (2016)). "'As a general rule, hearsay evidence is incompetent and inadmissible,' and 'the party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" *Taylor v. Commonwealth*, 28 Va. App. 1, 10 (1998) (quoting *Braxton v. Commonwealth*, 26 Va. App. 176, 183-84 (1997)).

"Evidence of an excited utterance is admissible to prove the truth of the matter asserted, as an exception to the hearsay rule, provided the extrajudicial statement is 'spontaneous and impulsive.'" *Clark v. Commonwealth*, 235 Va. 287, 292 (1988) (quoting *Upton v. Commonwealth*, 172 Va. 654, 657 (1939)). "The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption

- 4 -

that it was made as the result of deliberation." *Synan v. Commonwealth*, 67 Va. App. 173, 184

(2017) (quoting *Hicks v. Commonwealth*, 60 Va. App. 237, 245 (2012)). That exception is now

codified at Virginia Rule of Evidence 2:803(2):

> The following are not excluded by the hearsay rule, even though
> the declarant is available as a witness:
>
>     . . . .
>
> (2) *Excited utterance.* — A spontaneous or impulsive statement
> prompted by a startling event or condition and made by a declarant
> with firsthand knowledge at a time and under circumstances
> negating deliberation.

"The measure of the burden of proof with respect to factual questions underlying the

admissibility of evidence is proof by a preponderance of the evidence." *Campos v.*

*Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Witt v. Commonwealth*, 215 Va. 670, 674

(1975)). These facts are determined by the trial court. *Bloom v. Commonwealth*, 262 Va. 814,

821 (2001). Its findings are binding on this Court "unless 'plainly wrong' or without evidence to

support them." *Campos*, 67 Va. App. at 702 (quoting *McGee v. Commonwealth*, 25 Va. App.

193, 198 (1997) (en banc)).

"There is no fixed rule by which the question whether the statement is admissible as an

excited utterance can be decided." *Caison v. Commonwealth*, 52 Va. App. 423, 431 (2008)

(quoting *Clark*, 235 Va. at 292). "Although not controlling, the lapse of time between the

'startling event' and a declaration offered in evidence is relevant to a determination whether the

declaration was spontaneous and instinctive, or premeditated and deliberative." *Synan*, 67

Va. App. at 184 (quoting *Doe v. Thomas*, 227 Va. 466, 471 (1984)). The issue "depends [upon]

the circumstances of each case." *Caison*, 52 Va. App. at 431 (alteration in original) (quoting

*Clark*, 235 Va. at 292).[4]

---

[4] For instance, in *Clark*, the Supreme Court found that a declarant's statement constituted an excited utterance, where the declarant was shot twice, walked nearly 500 feet to a store, and

- 5 -

At the hearing on Sykes's motion *in limine,* the trial court had the opportunity to see R.M.'s recorded reactions to Sykes's actions. In the seventh clip, it could see the sudden movement of her covered body in the moment that Sykes was leaning over her and reaching towards her breast. It could hear her statements in the seconds following that movement, and it could evaluate her words and the tone of her voice for indications of surprise, agitation, and indignation. It could contrast the suddenness and immediacy of those reactions with the absence of such reactions in the first six clips to infer whether she was indeed startled, or whether it was more likely than not that she was sleeping during those other recordings. The record supports the trial court's finding that the statements in the seventh and eighth clips constituted an excited utterance because such statements by R.M. were the result of a startling event and the circumstances precluded deliberation.

Sykes focuses on what he describes as R.M.'s "dementia" to argue that the trial court should have considered the confusion associated with that condition and found that the utterance was not the product of a startling event and therefore inadmissible. We disagree. While R.M. struggled with "memory problems," that is not dispositive in determining whether her statements constituted an excited utterance. Here, R.M.'s challenged statements were prompted by an unknown man unexpectedly entering her room without permission while she was not alert and leaning over her while she was in a vulnerable position. Under these circumstances, the trial court did not abuse its discretion in admitting R.M.'s statements.[5]

then while "calm" and "coherent" told the store employee who had shot him. 235 Va. at 293. "Considering all the circumstances surrounding the statement," the Supreme Court "h[e]ld that the trial court properly exercised its discretion in admitting the declaration as an excited utterance" because the declarant was mortally wounded, suffered serious trauma, was in a state of shock, and the statements were "part of the instinctive reaction to a horrifying event" and "not responsive to any question from those in the store." *Id.*

[5] Sykes also argues that the jury had to speculate whether R.M. was asleep and that, if she were not, this would defeat the Commonwealth's contention that she was startled when she made

- 6 -

II. Sufficiency

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on appeal "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

her utterances. The argument is unpersuasive. First, a juror watching the video could rationally conclude R.M. was asleep. Second, it is not the jury's task to resolve the admissibility of her statements. The trial judge resolved that question prior to trial. The only question the jury faced was what weight to give that evidence. Whether or not the jury ultimately found it persuasive has no bearing on its threshold admissibility.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). "The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'" *Id.*

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000). "And the hypotheses which must be reasonably excluded are those which flow from the evidence itself, and not from the imagination of defendant's counsel." *Turner v. Commonwealth*, 218 Va. 141, 148 (1977). "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced." *Stamper v. Commonwealth*, 220 Va. 260, 272 (1979). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

A. Aggravated Sexual Battery

The offense of aggravated sexual battery and its elements are defined by statute. As charged, the jury was required to find two elements: (1) that Sykes "sexually abused" R.M. and

- 8 -

(2) that he accomplished the act through the use of her "physical helplessness." Code § 18.2-67.3(A)(2). "Sexual abuse," as pertinent here, means as "an act committed with the intent to sexually molest, arouse, or gratify any person where [the] accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts."[6] Code § 18.2-67.10(6)(a). "Intimate parts," as pertinent here, includes the victim's breast. Code § 18.2-67.10(2).

In the third video clip, Sykes's right hand touches the fabric over R.M.'s left breast; Sykes's penis was visible seconds before. In the sixth and seventh video clips, Sykes's hand ends up out of frame while R.M. is seen lying flat on the bed, with the curve of her left breast visible. Sykes's right arm is extended, and his hand is at the level of the bed covers when it exits the frame. A rational juror could infer that Sykes's right arm and hand extended to one or both of her breasts both in the sixth clip, where the cuff of Sykes's jacket appears close enough to her left breast to touch it, and in the seventh clip, when she cried out that she was touched on her bust. Sykes concluded the same at trial, specifically characterizing the seventh clip as "where you see him touching." A reasonable juror could conclude that Sykes touched the material directly over her breast at least once.

"[I]ntent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." *Cornell v. Commonwealth*, 76 Va. App. 17, 29 (2022) (quoting *Secret v. Commonwealth*, 296 Va. 204, 229 (2018)). Because Sykes's conduct occurred over such a short span of time, the jury could consider his actions in repeatedly

---

[6] "Molest is defined as 'to meddle or interfere with unjustifiably often as a result of abnormal sexual motivation.' *Webster's Third New International Dictionary* 1455 (1993). Arouse is 'to give rise to: excite, stimulate.' *Id.* at 120. Gratify is defined as 'to give or be a source [of] pleasure or satisfaction to.' *Id.* at 992." *Pulliam v. Commonwealth*, 55 Va. App. 710, 715 n.2 (2010) (alteration added).

exposing his penis, and stroking it, as he approached R.M. and then touched her breast, to infer his intent.

The jury also heard that Sykes offered different explanations to the police to account for any actions the camera may have recorded. The jury was free to reject his explanations. The jury could have rejected Sykes's initial claim that R.M. called for help. It could also have rejected his second claim that he exposed himself to avoid urinating. The jury could, at the same time, have credited Sykes's partial admission that he touched R.M. and saw bandages under her shirt. "A 'fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury may reject that which it finds implausible, but accept other parts which it finds believable.'" *Sanford v. Commonwealth*, 54 Va. App. 357, 364 (2009) (quoting *Pugliese v. Commonwealth*, 16 Va. App. 82, 92 (1993)). And the jury could have concluded that Sykes was lying to conceal his guilt. In sum, the evidence permitted a reasonable juror to conclude that Sykes intended to sexually molest R.M. or to arouse or gratify himself.

The last element, "*physical helplessness*" is defined as "unconsciousness or any other condition existing" when the offense occurred "which otherwise rendered the complaining witness physically unable to communicate an unwillingness to act and about which the accused knew or should have known." Code § 18.2-67.10(4). Sykes acknowledges that, if the jury concluded that R.M. was asleep, any touching during that time was accomplished through "physical helplessness."

In *Woodward v. Commonwealth*, 12 Va. App. 118 (1991), the appellant also challenged "the sufficiency of the evidence concerning the victim's state of sleep at the time" of the sexual assault. 12 Va. App. at 121. This Court noted that "'unconsciousness' can mean 'temporarily lacking full awareness.'" *Id.* "Likewise, common experience tells us that sleep is not an all or

nothing condition. The physical state of 'sleep' is of common experience and understanding to the average person or juror." *Id.*

Here, the jury could see R.M. lying motionless in bed through the first six clips, breathing regularly, and showing no reaction to Sykes's conduct, including his exposure of his penis and his touching of her chest. It could have credited the son's testimony that his mother spent most of her time in her room, either napping or watching television. The jury also saw R.M.'s sudden and agitated reaction in the seventh clip, and it could have concluded that she was startled awake from her nap. The recordings are consistent with R.M. being asleep when Sykes entered her room, exposed himself, and repeatedly touched her intimate parts.

Thus, the trial court did not err in denying the motion to strike this charge.

### B. Indecent Exposure

> Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor.

Code § 18.2-387. This Court has held "that 'public place,' as used in Code §§ 18.2-387 and 18.2-387.1 comprises places and circumstances where the offender does not have a reasonable expectation of privacy, because of the foreseeability of a non-consenting public witness." *Johnson v. Commonwealth*, 75 Va. App. 475, 481 (2022) (quoting *Barnes v. Commonwealth*, 61 Va. App. 495, 500 (2013)). Sykes does not dispute that his private parts were exposed, or that R.M.'s room was a public place. He contends only that it did not constitute an "obscene display or exposure."

For purposes of offenses under Code § 18.2-387, "obscene" is defined as follows:

> The word "*obscene*" where it appears in this article shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse,

- 11 -

and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value.

Code § 18.2-372.

As with proof of other intents, a defendant's prurient interest can, and often must, be decided by circumstantial evidence. Such intent can be proven either by evidence that the defendant was visibly aroused and masturbating, *see Morales v. Commonwealth*, 31 Va. App. 541, 543 (2000); *Copeland v. Commonwealth*, 31 Va. App. 512, 514 (2000); or where the totality of the circumstances supports an inference that the accused had as his dominant purpose a prurient interest in sex, *see Hart v. Commonwealth*, 18 Va. App. 77, 80 (1994).

Sykes denies that there was any evidence that he was "visibly aroused or that he was masturbating in front" of R.M. The record supports a different conclusion. The third clip allowed a jury to conclude that Sykes was moving his hand along his penis as he entered her bedroom, that he continued that action until he was three or four steps from the bed, and that he never concealed his penis.

Sykes's focus also is too narrow. The jury was not limited to evidence of Sykes's conduct "in front" of R.M. As with the other offense, Sykes's entire conduct over such a short span of time was part of the totality of circumstances relevant to infer his overall intent. The jury was free to infer that his stroking of his penis, coupled with his touching of R.M.'s chest, evidenced a continuing prurient interest in sex. The trial court did not err in denying the motion to strike the charge.

III. Flight Instruction

The decision regarding granting or denying a jury instruction generally rests "in the sound discretion of the trial court." *Banks v. Commonwealth*, 67 Va. App. 273, 281 (2017) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "On appeal, we review the trial

court's 'broad discretion in giving or denying instructions requested' for an abuse of discretion." *Williams v. Commonwealth*, 64 Va. App. 240, 246 (2015) (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (en banc)). An appellate court's "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Cooper*, 277 Va. at 381 (alteration in original) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)); *see also Cheripka v. Commonwealth*, 78 Va. App. 480, 502 (2023).

"Additionally, '[m]ore than a scintilla of evidence must be present to support an instruction.'" *Williams*, 64 Va. App. at 246 (quoting *Eaton v. Commonwealth*, 240 Va. 236, 255 (1990)); *see LeVasseur v. Commonwealth*, 225 Va. 564, 590 (1983). "[T]he weight of the credible evidence that will amount to more than a mere scintilla of evidence is a matter to be resolved on a case-by-case basis." *Pinedo v. Commonwealth*, 72 Va. App. 74, 81 (2020) (quoting *Eaton*, 240 Va. at 247); *see Brandau v. Commonwealth*, 16 Va. App. 408, 411-12 (1993).

"It is well-established that '[f]light following the commission of a crime is evidence of guilt, and the jury may be so instructed.'" *Cheripka*, 78 Va. App. at 503 (quoting *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002)). "[T]o show a 'consciousness of guilt,' the evidence must demonstrate a 'nexus' between the flight and the alleged offense." *Id.* (quoting *Ricks*, 39 Va. App. at 335). "Multiple potential causes for a defendant's flight, including other offenses unrelated to the charged offense, do not undermine the nexus of the flight to the charged offense." *Id.* "Instead, such circumstances are properly submitted to and weighed by the jury." *Id.*

Sykes does not dispute that a flight instruction was justified. Rather, he argues that the instruction, as given, misstated the law. The jury was given the following instruction:

> If the person leaves a place where a crime was committed or flees to avoid detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime. However it is a circumstance that you may consider along with the other evidence.

Sykes relies on *Turman v. Commonwealth*, 276 Va. 558, 566 (2008), to argue that the trial court erred by including the first phrase of the granted instruction, "if a person leaves the place where a crime was committed," because that phrase erroneously defined the legal concept of "flight."

In *Turman*, the victim repeatedly told the defendant to leave her house after a sexual assault, and he complied. 276 Va. at 561-63. The trial court instructed the jury that "if a person leaves the place where a crime was committed, or flees to avoid detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime. However, it is a circumstance which you may consider along with the other evidence." *Id.* at 563-64. The Supreme Court noted that "a well-established principle in this Commonwealth is that a suspect's acts to escape, or evade detection or prosecution for criminal conduct may be evidence at a criminal trial, and a jury may be instructed that it could consider such acts." *Id.* at 564. It found, however, that the record, in that case, was "simply devoid of more than a scintilla of evidence that Turman left the victim's apartment after the sexual acts had occurred because he sought to avoid detection, apprehension, arrest, or criminal prosecution." *Id.* at 565. It accordingly held that the trial court erred because the instruction was not supported by the evidence. *Id.* at 564-65.

*Turman* then explained that the disjunction separating "if a person leaves the place where a crime was committed" from the next phrase rendered both the given instruction, and the model instruction from which the language was taken, incorrect statements of law. *Id.* at 566. It rejected the Commonwealth's argument that any error was harmless because, on the testimony

presented, the inference allowed by the unjustified instruction could have swayed the jury. *Id.* at 568.

Two years later, the Supreme Court expressly distinguished *Turman* and upheld granting the criticized instruction where the record supported the inference. *See Thomas v. Commonwealth*, 279 Va. 131, 168 (2010) ("By contrast, this record is replete with evidence from which such an inference of guilt may be drawn from flight."). The same is true here. In clips seven and eight, Sykes can be seen fleeing R.M.'s bedroom immediately after she began calling out. The record includes more than a scintilla of evidence that Sykes fled her room to avoid detection, apprehension, arrest, or criminal prosecution. The trial court's decision thus comports with *Thomas*, and the trial court did not abuse its discretion in giving the instruction.

As in *Thomas*, the record here "is replete with evidence from which such an inference of guilt may be drawn from flight." *Id.* The recording of Sykes's fleeing out of R.M.'s unit immediately after R.M. awoke from his touching supports granting the flight instruction in this case. Sykes's offered explanations do not change the analysis, as "multiple potential causes for a defendant's flight, including other offenses unrelated to the charged offense, do not undermine the nexus of the flight to the charged offense." *Walker v. Commonwealth*, 79 Va. App. 737, 749 (2024) (quoting *Cheripka*, 78 Va. App. at 503). The jury was entitled to consider Sykes's flight as evidence of his consciousness of guilt. Thus, the trial court did not err in giving the challenged instruction.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*